# 25-437-cr

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

JUSTIN TURNICK,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLANT

LUCAS ANDERSON
*Of Counsel*
ROTHMAN, SCHNEIDER, SOLOWAY
& STERN, LLP
*Attorneys for Defendant-Appellant*
100 Lafayette Street, Suite 501
New York, New York 10013
(212) 571-5500

CP COUNSEL PRESS (800) 4-APPEAL • (386635)

# Table of Contents


Table of Authorities ........ iii

Statement of Questions for Appellate Review ........ 1

Statement of Jurisdiction ........ 2

Statement of the Case ........ 3

Statement of Facts ........ 4

I. Turnick's Plea ........ 4

II. Sentencing ........ 6

A. The Presentence Investigation Report ........ 6

B. The Parties' Sentencing Arguments ........ 7

C. The Sentencing Proceeding ........ 7

Summary of the Argument ........ 9

Argument ........ 11

I. The district court erroneously determined that a criminal history point was warranted based on Turnick's prior traffic infraction. ........ 11

A. Standard of Review ........ 11

B. Relevant Provisions ........ 12

1. New York VTL § 1192(1) ........ 12

2. U.S.S.G. § 4A1.2 ........ 13

3. Application Note 5 ........ 14

C. This Court's Precedents ........ 15

D. Analysis ....................................................................................17

1. Turnick's VTL § 1192(1) infraction is properly analyzed under § 4A1.2(c)(1). ....................................................................19

2. Under § 4A1.2(c)(1), Turnick's DWAI infraction may not be included in his criminal history calculation.............................................20

II. The government's breach of the plea agreement amounted to plain error....25

A. The government's breach .........................................................25

B. The "plain error" standard.........................................................28

C. Remedy ........................................................................................30

Conclusion ..............................................................................................31

Certificate of Compliance .......................................................................32

# Table of Authorities

## Cases

Page(s)

*Costello v. Milano*,
20 F.Supp.3d 406 (S.D.N.Y. 2014) .................................................... 12, 13

*Hoyos v. City of N.Y.*,
999 F.Supp.2d 375 (E.D.N.Y. 2013) ........................................................ 13

*People v. Dipoumbi*,
889 N.Y.S.2d 506, 2009 WL 1395826 (Crim. Ct. N.Y. Co. 2009) ............ 24

*People v. Gingras*,
22 Misc.3d 22, 871 N.Y.S.2d 812 (App. Term. 2008) ............................... 13

*People v. Goldblatt*,
950 N.Y.S.2d 210 (App. Div. 3d Dept. 2012) ........................................... 22

*People v. Padmore*,
993 N.Y.S.2d 645, 2014 WL 2869872 (App. Term. 2d Dept. 2014) .......... 22

*People v. Prescott*,
95 N.Y.2d 665 (2001) ............................................................................... 12

*People v. Reding*,
167 A.D.2d 716, 564 N.Y.S.2d 489 (App. Div. 3d Dept 1990) .................. 13

*People v. Westcott*,
84 A.D.3d 1510, 923 N.Y.S.2d 763 (App. Div. 3d Dept. 2011) ................. 12

*Puckett v. United States*,
556 U.S. 129 (2009) ........................................................................... 29, 30

*Santobello v. New York*,
404 U.S. 257 (1971) ............................................................................ 25-26

*Stinson v. United States*,
508 U.S. 36 (1993) .................................................................................. 16

## Table of Authorities (Cont'd)

### Cases

**Page(s)**

*United States v. Amico*,
416 F.3d 163 (2d Cir. 2005) .................................................. 27, 29

*United States v. DeJesus-Concepcion*,
607 F.3d 303 (2d Cir. 2010) .................................................. 11-12, 15

*United States v. Enriquez*,
42 F.3d 769 (2d Cir. 1994) .................................................. 30

*United States v. Ferrara*,
954 F.2d 103 (2d Cir. 1992) .................................................. 25

*United States v. Gonzalez-Rivera*,
No. 05 Cr. 402, 2011 WL 4916395 (S.D.N.Y. Oct. 17, 2011) .............. 7, 21

*United States v. Lawlor*,
168 F.3d 633 (2d Cir. 1999) .................................................. 26

*United States v. Martinez-Santos*,
184 F.3d 196 (2d Cir. 1999) .................................................. 11, 15

*United States v. Morales*,
239 F.3d 113 (2d Cir. 2000) .................................................. 11, 15, 21, 22

*United States v. Olano*,
507 U.S. 725 (1993) .................................................. 28, 29

*United States v. Palladino*,
347 F.3d 29 (2d Cir. 2003) .................................................. 25, 27-28, 29, 30

*United States v. Paredes*,
185 F.Supp.3d 287 (E.D.N.Y. 2016) .................................................. 7, 20

*United States v. Perez*,
No. 24 Cr. 368, 2025 WL 2047829 (S.D.N.Y. July 22, 2025) ............ 17, 19, 20-22, 23-24

## Table of Authorities (Cont'd)

### Cases

Page(s)

*United States v. Potes-Castillo*,
638 F.3d 106 (2d Cir. 2011) ...................................... 6, 11, 12, 15-16, 17, 19

*United States v. Rainford*,
110 F.4th 455 (2d Cir. 2024) ........................................................................ 19

*United States v. Rivera*,
115 F.4th 141 (2d Cir. 2024) ........................................................... 25, 26, 29

*United States v. Sanders*,
205 F.3d 549 (2d Cir. 2000) .......................................................................... 11

*United States v. Valente*,
915 F.3d 916 (2d Cir. 2019) .......................................................................... 12

*United States v. Valente*,
688 Fed. App'x 76 (2d Cir. 2017) ........................................................ 16-17

*United States v. Vaval*,
404 F.3d 144 (2d Cir. 2005) ........................................................... 25, 26, 30

*United States v. Villafuerte*,
502 F.3d 204 (2d Cir. 2007) ................................................................. 28-29

*United States v. Walia*,
No. 14 Cr. 23, 2016 WL 4257347 (E.D.N.Y. Aug. 11, 2016) .......... 7, 20, 21

*United States v. Wilson*,
920 F.3d 155 (2d Cir. 2019) .................................................................. 25, 30

### Statutes, Rules, and Sentencing Guidelines

18 U.S.C. § 3231 .......................................................................................... 2

18 U.S.C. § 3553(a) ..................................................................................... 5

## Table of Authorities (Cont'd)

### Statutes, Rules, and Sentencing Guidelines

Page(s)

21 U.S.C. § 812 ........ 4

21 U.S.C. § 841(a)(1) ........ 4

21 U.S.C. § 841(b)(1)(B) ........ 3, 4, 5, 6

21 U.S.C. § 841(b)(1)(C) ........ 4

21 U.S.C. § 846 ........ 3, 4, 6

28 U.S.C. § 1291 ........ 2

N.Y. VTL § 155 ........ 20

N.Y. VTL § 1192(1) ........ 3, 5, 6, 9, 12, 15, 18, 19, 20, 21, 22

N.Y. VTL § 1193(1)(a) ........ 12, 20

N.Y. VTL § 1212 ........ 21, 22, 24

N.Y. VTL § 1801 ........ 21

Fed. R. App. P. 4(b)(1)(A)(i) ........ 2

Fed. R. App. P. 32(a) ........ 32

Fed. R. Crim. P. 52(b) ........ 28

U.S.S.G. § 1B1.2(c) ........ 4

U.S.S.G. § 2D1.1(a)(2) ........ 4

U.S.S.G. § 3E1.1(a) ........ 4

U.S.S.G. § 3E1.1(b) ........ 4

## Table of Authorities (Cont'd)

### Statutes, Rules, and Sentencing Guidelines

**Page(s)**

U.S.S.G. § 4A1.2(c) ........................................................ 9, 11, 13, 15, 16, 19, 20

U.S.S.G. § 4A1.2(c)(1) .................................... 9, 11, 13, 14, 15, 16, 19, 20, 22, 23

U.S.S.G. § 4A1.2(c)(2) ........................................................................... 9, 16

U.S.S.G. § 4A1.2 cmt. n.5 .................................................. 6, 9, 14, 15, 16, 17, 19

U.S.S.G. § 4A1.2 cmt. n.12(A) .............................................. 10, 14, 18, 21, 22, 24

U.S.S.G. § 4B1.1 ......................................................................................... 5

U.S.S.G. Chapter 5, Part A ........................................................................... 8

U.S.S.G. amend 766 ...................................................................... 14-15, 18, 19-20

## Statement of Questions for Appellate Review

1. Whether, in calculating the U.S. Sentencing Guidelines range, the district court erroneously determined that a criminal history point could be added to appellant Justin Turnick's criminal history calculation based on a prior New York traffic infraction for driving while ability impaired.

2. Whether the government breached the plea agreement where it failed to stand by the stipulated Guidelines criminal history calculation at sentencing.

## Statement of Jurisdiction

The United States District Court for the Southern District of New York had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. The judgment of conviction and sentence was filed on February 21, 2025. A.182.[1] On February 24, 2025, Justin Turnick filed a timely notice of appeal, pursuant to Rule 4(b)(1)(A)(i) of the Federal Rules of Appellate Procedure. A.189. Therefore, this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

[1] Citations to "A" refer to the appendix filed under separate cover. "PSR" refers to the presentence investigation report filed under seal.

## Statement of the Case

Turnick appeals from the judgment filed on February 21, 2025. On August 6, 2024, Turnick appeared before the Honorable Philip M. Halpern of the Southern District of New York and pled guilty, pursuant to a written plea agreement, to one count of conspiring to distribute and possess with the intent to distribute narcotics, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(vi). A.17-54. In the plea agreement, the parties stipulated that "zero criminal history points are warranted" for Turnick's prior infraction for driving while ability impaired by the consumption of alcohol ["DWAI"], in violation of New York Vehicle and Traffic Law ["VTL"] § 1192(1). A.50. However, the presentence investigation report filed in advance of sentencing assigned one criminal history point to that prior infraction. PSR ¶ 66.

At sentencing, Turnick objected to the Probation Office's U.S. Sentencing Guidelines criminal history calculation. The government, notwithstanding its contractual stipulations regarding Turnick's criminal history, advised that it did not object to any aspect of the PSR. A.98. The district court ultimately overruled Turnick's objection, which had the effect of increasing the applicable criminal history category from II to III. The district court then imposed a prison sentence at the top of the resulting Guidelines range.

Turnick is currently serving the custodial portion of his sentence at FCI Beckley in Beaver, West Virginia.

## Statement of Facts

### I. Turnick's Plea

Through an indictment filed on July 11, 2023, the government charged Turnick with two counts of distribution of narcotics resulting in death and four counts of distribution of narcotics resulting in serious bodily injury, each in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C). A.9-13.

Through a plea agreement dated July 1, 2024, the parties agreed that Turnick would plead guilty to a one-count superseding information charging a violation of §§ 846 and 841(b)(1)(B)(vi). A.49.[2] The parties also stipulated to a Guidelines offense level calculation consisting of a base offense level of 38, pursuant to §§ 1B1.2(c) and 2D1.1(a)(2); a two-level reduction for acceptance of responsibility, pursuant to § 3E1.1(a); and an additional one-level reduction for timely notice of intent to plead guilty, pursuant to § 3E1.1(b). A.50. With respect to the Guidelines criminal history calculation, the parties agreed that Turnick had three criminal history points attributable to a prior felony conviction, and that he therefore falls within criminal history category II. A.50-51. As relevant to this appeal, the parties further stipulated that "*zero history points are warranted for the defendant's February 3, 2023, conviction . . . for driving while ability impaired by*

[2] The appeal waiver provision in the plea agreement would have applied to a direct appeal or collateral challenge to "any sentence within or below the Stipulated Guidelines Range of 188 to 235 months' imprisonment." A.52.

*the consumption of alcohol*, in violation of [V.T.L.] § 1192(1), for which he was sentenced principally to a term of fifteen days' imprisonment." A.50 (emphasis added). Based on these stipulations, the parties arrived at a "Stipulated Guidelines Range" of 188 to 235 months' imprisonment (with a mandatory minimum term of 60 months' imprisonment under § 841(b)(1)(B)). A.51.

With respect to the parties' mutual promises relating to the stipulated Guidelines calculation, the plea agreement states:

> [N]either party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under [the Guidelines].
>
> The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).
>
> . . . [N]othing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or other such range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined *based upon information not contained in this Agreement that the defendant's criminal history category is different from that set forth above*; and (iv) to seek an appropriately adjusted Guidelines range . . . if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1.

A.51 (emphasis added).

On August 6, 2024, Turnick appeared before Judge Halpern and pled guilty to a superseding information charging one count of conspiracy to distribute fentanyl, in violation of §§ 846 and 841(b)(1)(B)(vi). *See* A.14-15 (superseding information); A.16 (waiver of indictment); A.17-48 (plea hearing transcript).

## II. Sentencing

### A. The Presentence Investigation Report

Paragraph 66 of the PSR describes Turnick's prior DWAI infraction as follows:

> On June 3, 2022, . . . officers responded to a vehicle accident with injuries. Upon arrival, they observed a black Nissan Altima off the road with severe damage. Turnick was the sole occupant in the driver sea[t] with the airbag deployed. He was conscious and had lacerations to his head, face, and arms. Turnick stated that he was at a friend's house and was driving home at the time of the accident. He believed he was driving on Strawtown Road, New City, NY. He further stated that he fell asleep while driving and subsequently struck an object. Turnick had pinpoint pupils, slurred speech, and was extremely disoriented. Recovered from Turnick['] s vehicle was a clear plastic bag of marijuana and a Newport cigarette box containing a bundle of heroin in the glove box as well as three straws with residue, a glass pipe, and rolling papers. Turnick was transported to Nyack Hospital via Ambulance where he was administered Narcan after he became somewhat unresponsive.

PSR ¶ 66. Contrary to the plea agreement, the Probation Office assigned one criminal history point to this prior infraction. *Ibid. See* PSR ¶ 134. In support, the Probation Office cited to U.S.S.G. § 4A1.2 cmt. n.5 and to this Court's opinion in *United States v. Potes-Castillo*, 638 F.3d 106 (2d Cir. 2011). PSR ¶ 134 n.3.

### B. The Parties' Sentencing Arguments

A certificate of conviction attached to Turnick's sentencing submission confirmed that he was previously found to have violated VTL § 1192(1). A.78. Because such violations "are not criminal convictions," but "are infractions of a non-criminal traffic law provision," Turnick argued that the Probation Office had erroneously assessed him an extra criminal history point, thereby increasing the applicable Guidelines range. A.66. In support, Turnick cited to *United States v. Walia*, No. 14 Cr. 23 (MKB), 2016 WL 4257347 (E.D.N.Y. Aug. 11, 2016), *United States v. Paredes*, 185 F.Supp.3d 287 (E.D.N.Y. 2016), and *United States v. Gonzalez-Rivera*, No. 05 Cr. 402 (KMW), 2011 WL 4916395 (S.D.N.Y. Oct. 17, 2011). A.66-67.

The government subsequently filed a sentencing submission in which it acknowledged the difference between the stipulated Guidelines calculation and the calculation set forth in the PSR and advised that it "stands by its stipulation in the plea agreement." A.86-87 & n.6.

### C. The Sentencing Proceeding

Turnick appeared for sentencing on February 20, 2025. At the outset of the proceeding, the district court adopted the facts set forth in the PSR and invited oral arguments relating to paragraph 66 of the PSR. A.96-98. After noting that "the Defendant has an issue" with the Probation Office's assessment of an extra

criminal history point under § 4A1.2, the district court asked: "Does the Government object to the Guidelines calculation or to anything else in the PSR?" A.96, 98. In response, counsel for the government stated: "*We do not*." A.98.

In responding to the same question, Turnick's attorney emphasized that a violation of New York's DWAI statute is "not a criminal offense" and referred to the caselaw set forth in Turnick's written sentencing submission. A.98. The district court rejected defense counsel's argument on the grounds that Turnick's cited cases "involve entirely different fact-patterns from this one." A.100. The district court further explained that:

> Here, there's no dispute that Mr. Turnick was actually driving while impaired by alcohol and that that conduct led to his conviction. Moreover, Application Note 5 . . . makes crystal clear that convictions for driving while intoxicated or under the influence, and similar offenses by whatever name they are known, are always counted toward a defendant's criminal history score without regard to how the offense is classified.

*Ibid*.

This ruling had the effect of increasing Turnick's criminal history category from II to III, resulting in an advisory Guidelines range of 210-262 months' imprisonment. A.102. *See* PSR ¶ 133; U.S.S.G. Chapter 5, Part A (sentencing table). The district court ultimately imposed a sentence at the top of this increased range: "262 months of imprisonment, to be followed by five years of supervised release." A.164.

## Summary of the Argument

Turnick's prior VTL § 1192(1) infraction should have been treated like any other petty offense analyzed under § 4A1.2(c)(1). In *Potes-Castillo*, 638 F.3d at 113, this Court specifically held that "driving while ability impaired convictions should be treated like any other misdemeanor or petty offense, except that they cannot be exempted under [§] 4A1.2(c)(2)." The Sentencing Commission's subsequent revision of § 4A1.2 cmt. n.5 did nothing to undermine that ruling. Commentary that conflicts with the text of a Guideline section is not binding, and this Court has already determined that "it would be plainly inconsistent with [§] 4A1.2(c) to argue that DWAI offenses, although they are 'misdemeanor [or] petty offenses,' are always counted and can never fit within the exclusion explicitly provided in [§] 4A1.2(c)(1)." *Id.* at 111. In holding otherwise, A.101, the district court here did not acknowledge, much less comply with, this aspect of the binding *Potes-Castillo* opinion. Nor did the district court address the fact that the revised version of Application Note 5 is limited by its plain language to "[c]onvictions for driving while intoxicated or under the influence," whereas VTL § 1192(1) offenses do not result in "convictions" and do not require proof that a defendant was "driving."

Moreover, to the extent the district court did implicitly analyze Turnick's DWAI infraction under § 4A1.2(c)(1), it relied on nothing more than unelucidated

factual distinctions. The court did not discuss (or even acknowledge) any of the relevant factors listed under § 4A1.2 cmt. n.12(A). Nor did the court explain why it believed the facts of Turnick's DWAI would be an appropriate factor for consideration where the relevant VTL provision does not apply to a wide range of conduct. And the court certainly did not provide a sufficient explanation as to how the particular facts of Turnick's DWAI infraction influenced its legal determination, other than to erroneously assert that "there's no dispute that Mr. Turnick was actually driving while impaired by alcohol." A.101.

Finally, the government's abandonment of its promise to stand by the stipulated Guidelines criminal history calculation at sentencing amounted to a plain error. While the government's sentencing submission advised that it stood by its contractual agreement, the government then walked away from that promise at sentencing when it advised the district court that it had no objections to the PSR's contrary Guidelines calculation. Even if this was an inadvertent error, Turnick's reasonable expectation that the government would advocate for the position that "zero criminal history points are warranted" for his prior DWAI infraction was not fulfilled. A.50. Therefore, because specific performance of the plea agreement is still possible, the case should be remanded to the Southern District of New York for resentencing before a different judge.

# Argument

## I. The district court erroneously determined that a criminal history point was warranted based on Turnick's prior traffic infraction.

### A. Standard of Review

As a general matter, this Court reviews legal determinations regarding Guidelines criminal history calculations *de novo*, while reviewing related factual findings for clear error. *Potes-Castillo*, 638 F.3d at 108-09.

In *United States v. Morales*, 239 F.3d 113, 117-18 (2d Cir. 2000), this Court explained that, "in the context of a challenge to counting a minor offense" under § 4A1.2(c), the applicable standard of review depends on the "range of conduct" covered by the statute underlying the predicate offense. If the statute "punishes only one basic form of conduct" (such as "fare-beating" or "transit scalping"), the question of whether the defendant's prior offense is "similar to" an offense enumerated under § 4A1.2(c)(1) "is properly understood to raise an issue of law, appropriate for *de novo* review." *Id*. at 118 (citing *United States v. Martinez-Santos*, 184 F.3d 196 (2d Cir. 1999), and *United States v. Sanders*, 205 F.3d 549 (2d Cir. 2000)). On the other hand, where a statute "punishes a range of conduct under [a] broad rubric" (such as "harassment"), findings of fact relating to "the particular conduct of the defendant" may also be relevant to the analysis employed at sentencing and reviewed on appeal. *Ibid. See United States v. DeJesus-*

*Concepcion*, 607 F.3d 303, 305 (2d Cir. 2010); *United States v. Valente*, 915 F.3d 916, 921 (2d Cir. 2019).

### B. Relevant Provisions

#### 1. New York VTL § 1192(1)

The New York DWAI provision at issue provides that "[n]o person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol." VTL § 1192(1). A violation of this provision "shall be a traffic infraction" and is punishable only by a maximum fine of $500 and/or a maximum of fifteen days' incarceration. VTL § 1193(1)(a). *See Potes-Castillo*, 638 F.3d at 108.

"The term 'operate' as used in the [VTL] is broader than the term 'drive'" because it "extends to a situation where a motorist begins to engage the motor for the purpose of putting the vehicle into motion." *People v. Westcott*, 84 A.D.3d 1510, 1512, 923 N.Y.S.2d 763 (App. Div. 3d Dept. 2011). *See Costello v. Milano*, 20 F.Supp.3d 406, 417 (S.D.N.Y. 2014). Specifically, one "operates a motor vehicle within the meaning of the statute when, in the vehicle, he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle." *People v. Prescott*, 95 N.Y.2d 665, 662 (2001) (cleaned up). Moreover, "[a]n individual is 'impaired'" within the meaning of § 1192(1) "if, by consuming alcohol, he 'has actually

impaired, to any extent, the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver.'" *Costello*, 20 F.Supp.3d at 417 (quoting *People v. Gingras*, 22 Misc.3d 22, 871 N.Y.S.2d 812, 813 (App. Term. 2008)) (emphasis added here). Accordingly, "[t]he degree of proof necessary to support an arrest for driving while impaired is 'far less rigorous' than that required for driving while intoxicated." *Hoyos v. City of N.Y.*, 999 F.Supp.2d 375, 387 (E.D.N.Y. 2013) (quoting *People v. Reding*, 167 A.D.2d 716, 717, 564 N.Y.S.2d 489 (App. Div. 3d Dept 1990)).

**2. U.S.S.G. § 4A1.2**

Section § 4A1.2(c) of the Sentencing Guidelines distinguishes between prior sentences which "are counted" towards a defendant's criminal history calculation (*i.e.*, "all felony offenses"); those which are counted only under certain conditions; and those which are "never counted." The second category is governed by § 4A1.2(c)(1), which states that prior sentences for certain enumerated misdemeanor or petty offenses, "and offenses similar to them, by whatever name they are known," are counted "only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense."

One of the offenses listed under § 4A1.2(c)(1) is "[c]areless or reckless driving." Application Note 12(A) to § 4A1.2 provides that, in order to determine "whether an unlisted offense is similar to an offense listed" in § 4A1.2(c)(1):

> [T]he court should use a common sense approach that includes consideration of relevant factors such as (i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

### 3. Application Note 5

Prior to 2012, Application Note 5 to § 4A1.2 provided that:

> Convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted. Such offenses are not minor traffic infractions within the meaning of 4A1.2(c).

*See Potes-Castillo*, 638 F.3d at 110. However, the Sentencing Commission subsequently enacted Amendment 766, which revised the text of § 4A1.2 cmt. n.5 to read:

> Convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are always counted, without regard to how the offense is classified. Paragraphs 1 and 2 of 4A1.2(c) do not apply.

According to the Commission, this amendment was intended to "clarify that convictions for driving while intoxicated and similar offenses are always counted, without regard to how the offenses are classified." U.S.S.G. amend. 766 ("Reason

for Amendment") (emphasis added). However, in amending the commentary to § 4A1.2(c), the Commission did not alter the text of the Guideline itself.

### C. This Court's Precedents

In *Morales*, this Court confirmed that, in determining whether a defendant's prior offense is "similar to" a listed § 4A1.2(c)(1) offense, "[t]he goal of the inquiry is to determine whether the unlisted offense under scrutiny is 'categorically more serious' than the Listed Offenses to which it is being compared." 239 F.3d at 118 (quoting *Martinez-Santos*, 184 F.3d at 206). The *Morales* panel also reiterated that "the 'similar to' comparison should focus on the particular facts of the prior offense" if "the statute that was violated covers a broad range of conduct." *Id. See id*. at 117-18 (regarding the applicable standard of review); *DeJesus-Concepcion*, 607 F.3d at 305-06 (discussing relevant factors where predicate offense under review was "unauthorized use of a vehicle in the third degree.").

In *Potes-Castillo*, 638 F.3d at 107, this Court held that a VTL § 1192(1) infraction "should not be counted toward [a defendant's] criminal history calculation if it is similar to an offense listed in" § 4A1.2(c)(1). Finding the pre-2012 version of Application Note 5 to be "ambiguous," the *Potes-Castillo* panel observed that it could mean either that: (1) like felonies, DWAI offenses are *always* counted without exception; or (2) DWAI sentences merely cannot be excluded as "minor traffic infractions" under § 4A1.2(c)(2). *Id.* at 110-11. This

Court rejected the first interpretation in part because it would "render[] the second sentence" of the then-existing version of the application note "meaningless." *Id.* at 110. *See id.* at 111-12. More importantly, the *Potes-Castillo* panel "[f]irst" determined that a felony-equivalency interpretation of the application note would be "inconsistent with the text of the Guideline section" itself. *Id.* at 111. This is because, "in the absence of Application Note 5, *it would be plainly inconsistent with section 4A1.2(c) to argue that DWAI offenses, although they are 'misdemeanor [or] petty offenses,' are always counted and can never fit within the exclusion explicitly provided in [§] 4A1.2(c)(1).*" *Ibid*. (emphasis added). On the other hand, this Court determined that interpreting the application note to mean that DWAI offenses "are counted" to the same extent as other misdemeanor and petty offenses (subject to exceptions) "presents no conflict with the text of the Guidelines section" and "remains the 'most accurate indication' of how to apply the Guideline." *Ibid.* (quoting *Stinson v. United States*, 508 U.S. 36, 45 (1993)). Accordingly, this Court held that DWAI convictions "should be treated like any other misdemeanor or petty offense, except that they cannot be exempted under [§] 4A1.2(c)(2)." *Id.* at 113.

Subsequently, in *United States v. Valente*, 688 Fed. App'x 76, 79 (2d Cir. 2017) (summary order), this Court upheld a district court's determination that, "under the analysis required by *Potes-Castillo*, certain of the Defendant's DWAI

convictions were categorically more serious than careless or reckless driving." In so holding, the *Valente* panel cited, in a parenthetical, *Morales*'s directive that "the particular conduct of the defendant" is relevant where the statute under review "punishes a range of conduct." *Id.* at 78-79. However, the non-precedential *Valente* summary order does not provide any explanation as to how New York's DWAI statute could be said to punish "a range of conduct."

### D. Analysis

The district court here implicitly determined that *Potes-Castillo* is no longer binding law[3] because the amended version of § 4A1.2 cmt. n.5 "makes crystal clear that convictions for driving while intoxicated or under the influence, and similar offenses by whatever name they are known, are always counted toward a defendant's criminal history score without regard to how the offense is classified." A.101. At the same time, the district court did not acknowledge this Court's explicit admonition that the text of the Guideline itself is inconsistent with the treatment of DWAI offenses as "a new category of alcohol-related driving offenses that, like felonies, are always counted." *Potes-Castillo*, 638 F.3d at 111. *See United States v. Perez*, No. 24 Cr. 368 (JHR), 2025 WL 2047829 at **7-8 (S.D.N.Y. July 22, 2025). Nor did the court address whether the plain language of the amended

[3] In a puzzling turn, the Probation Department cited *Potes-Castillo* as if it provided support for the PSR's reliance on § 4A1.2 cmt. n.5. PSR ¶ 134 & n.3.

application note could apply to offenses such as VTL § 1192(1) that do not result in "[c]onvictions" and do not require proof that the defendant was "driving" at the time of his or her impairment.

In what appears to be an alternative holding, the district court ruled that the post-Amendment 766 cases cited in Turnick's sentencing memorandum are distinguishable because they "involve entirely different fact-patterns from this [case]." A.101. But the district court never alluded to any of the factors listed under § 4A1.2 cmt. n.12(A). Nor did it make an assessment as to whether "the particular conduct of the defendant" was an appropriate factor for consideration, *Morales*, 239 F.3d at 118, in light of the relatively narrow scope of conduct governed by VTL § 1192(1). Even if it had been proper for the court to invoke "different fact-patterns" as the *only* factor relevant to its consideration, its analysis of the relevant facts was limited to the false assertion that "there's no dispute that Mr. Turnick was actually driving while impaired by alcohol and that that conduct led to his conviction." A.101. But regardless of whether the court should have considered any other factor, the few relevant facts set forth in the record of this case confirm that Turnick's prior VTL § 1192(1) infraction was not as serious as a "reckless driving" misdemeanor, and certainly was not "categorically more serious" than such a crime.

### 1. Turnick's VTL § 1192(1) infraction is properly analyzed under § 4A1.2(c)(1).

Guidelines commentary "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, [the relevant] Guideline." *United States v. Rainford*, 110 F.4th 455, 475 (2d Cir. 2024). This Court has already determined that "it would be plainly inconsistent with section 4A1.2(c) to argue that DWAI offenses, although they are 'misdemeanor [or] petty offenses,' are always counted and can never fit within the exclusion explicitly provided in [§] 4A1.2(c)(1)." *Potes-Castillo*, 638 F.3d at 111. The ensuing enactment of Amendment 766 did not alter the text of § 4A1.2(c) itself, and nothing since *Potes-Castillo* has "change[d] the fact that, under the plain language of the Guideline, 'felonies are the only class of sentences always counted.'" *Perez*, 2025 WL 2047829, at *7 (quoting *Potes-Castillo*, 638 F.3d 109).

Even if Application Note 5 did not contradict the Guideline section it purports to interpret, it is definitionally limited to prior offenses that result in "*[c]onvictions* for *driving* while intoxicated or under the influence," and is therefore inapplicable to VTL § 1192(1). As Judge Rearden recently observed, Amendment 766 was intended to "resolve[] differences among circuits regarding when prior sentences for the *misdemeanor offenses* of driving while intoxicated and driving under the influence (and any similar offenses by whatever name they are known) are counted." *Perez*, 2025 WL 2047829, at *6 (quoting U.S.S.G.

amend 766, Supplement to App'x C, at 15-16).[4] But under New York law, a violation of VTL § 1192(1) "shall be a traffic infraction," and "[a] traffic infraction is not a crime[.]" VTL §§ 155, 1193(1)(a). *See Paredes*, 185 F.Supp.3d at 295-96 (holding that, because a New York DWAI offense "d[oes] not result in a criminal conviction, but rather an 'infraction' of a non-criminal traffic law provision," it "does not increase [a defendant's] criminal history under the Guidelines."); *Walia*, 2016 WL 4257347 at *4 ("[V]iolations of § 1192.1 are not criminal convictions[.]"). Moreover, VTL § 1192(1) may apply to situations where "there was no driving involved." *Paredes*, 185 F.Supp.3d at 296. *See Walia*, 2016 WL 4257347 at *1 (addressing a situation where the defendant violated § 1192 even though he "was not driving the car, but was instead asleep with the keys in the ignition and the engine running."). Therefore, the amended application note is, by its own terms, irrelevant to a § 4A1.2(c) analysis of Turnick's prior DWAI violation.

### 2. Under § 4A1.2(c)(1), Turnick's DWAI infraction may not be included in his criminal history calculation.

Because Turnick's prior VTL § 1192(1) infraction does not satisfy the criteria set forth under § 4A1.2(c)(1)(A)-(B), the only remaining question is whether that infraction "is similar to a conviction for careless or reckless

[4] *Perez* was decided after Turnick's sentencing in this case.

driving"—one of the specific misdemeanor offenses enumerated under § 4A1.2(c)(1). *Perez*, 2025 WL 2047829 at *8. In other words, Turnick's prior DWAI may "count toward his criminal history only if it is categorically more serious than reckless driving." *Gonzalez-Rivera*, 2011 WL 4916395, at *2. In this context, a "categorical" review is not limited to a comparison of the essential elements of listed and unlisted offenses. Rather, the adverb "categorically" is used "in its ordinary sense to mean 'without qualification or reservation.'" *Morales*, 239 F.3d at 118 n.5.

A review of the various factors listed under § 4A1.2 cmt. n.12(A) confirms that Turnick's DWAI infraction is not categorically more serious than "[c]areless or reckless driving." Indeed, these factors make clear that run-of-the-mill VTL § 1192(1) infractions are categorially not as serious as reckless driving misdemeanors. Under New York law, "[r]eckless driving shall mean driving . . . in a manner which unreasonably interferes with the free and proper usage of the public highway or any parking lot, or unreasonably endangers users of the public highway or any parking lot." VTL § 1212. While DWAI is a traffic offense punishable by a maximum term of 15 days' incarceration, a first-time "reckless driving" offense is a misdemeanor punishable by up to 30 days' incarceration. *See* VTL §§ 1212, 1801. This difference in classification and punishment makes sense, given that "considerably more than mere negligence, than mere traffic violations or

infractions, and more than the fact of a collision must be found in order to sustain a conviction of reckless driving." *Perez*, 2025 WL 2047829 at *8 (internal quotation omitted). *See People v. Padmore*, 993 N.Y.S.2d 645, 2014 WL 2869872, at **1-2 (App. Term. 2d Dept. 2014). Moreover, unlike DWAI, reckless driving must involve the actual "unreasonabl[e] interfere[nce] with" or "unreasonabl[e] endanger[ment of]" other people. VTL § 1212. *See infra* pp.23-24. With respect to "the elements of each offense," § 4A1.2 cmt. n.12(A), VTL § 1192(1) "focuses on a defendant's impairment," while the reckless driving statute "focuses on the driver's conduct." *Perez*, 2025 WL 2047829 at *9. Moreover, in terms of "the relative level of culpability," § 1192(1) is violated by *any* level of impairment due to drinking alcohol, whereas full-blown "intoxication, absent more" would not be sufficient to sustain a reckless driving charge. *Ibid.* (quoting *People v. Goldblatt*, 950 N.Y.S.2d 210, 215 (App. Div. 3d Dept. 2012)). *See Padmore*, 2014 WL 2869872, at **1-2 (dismissing reckless driving charge but upholding DWAI and "driving while intoxicated" charges).

Turnick maintains that VTL § 1192(1) does not cover a "broad rubric" of conduct, *Morales*, 239 F.3d at 118, and that there is no reason a categorical review of that statute under § 4A1.2(c)(1) should include an assessment of the facts surrounding a particular DWAI offense (especially where the only relevant "evidence" consists of one paragraph in a PSR that is filed after the parties

specifically agree that the defendant's prior infraction does *not* qualify for a criminal history point). And the facts of a defendant's prior traffic infraction certainly should not be the *only* factor mentioned by the district court in connection with its implicit ruling under § 4A1.2(c)(1), particularly where the court's own recitation of the relevant facts does not amount to a rational explanation. A.101. However, even if vaguely recalled facts were a proper factor for a sentencing court to consider, the PSR's description of the relevant facts here confirms that Turnick's DWAI infraction was not categorically more serious than a "reckless driving" crime.

In *Perez*, 2025 WL 2047829 at *10, the defendant drank "four or five beers" and then drove his car across the double-yellow line and onto the wrong side of the road in order to avoid a parked car. While that defendant "unquestionably and unacceptably created a *risk* of grievous harm," Judge Rearden noted that his conduct "likely would *not* be sufficient to sustain a reckless driving charge" under New York law because it did not in fact "unreasonably interfere with" or "unreasonably endanger" other people. *Ibid.* (emphasis added).

> New York courts have interpreted the reckless driving statute to require that the defendant created an actual and apparent, as opposed to a theoretical, danger to the person or property of another. *At a minimum, this standard necessitates evidence that pedestrians or other drivers were affected,* though *more even than the fact of a collision must be found* in order to sustain a conviction of reckless driving.

*Id.* at *9 (cleaned up) (emphasis added). *See People v. Dipoumbi*, 889 N.Y.S.2d 506, 2009 WL 1395826, at *3 (Crim. Ct. N.Y. Co. 2009) ("In the absence of facts alleging that" the defendant "created an actual and apparent, as opposed to a theoretical, danger to the person or property of another," that conduct "would not satisfy the VTL § 1212 statute."). In this case, the facts set forth in paragraph 66 of the PSR do not suggest that Turnick actually interfered with or endangered any other person. As such, those facts are categorically less serious than *any* case in which a reckless driving change could be sustained.

Moreover, while Turnick undoubtedly created a potential "risk" of harm to others, the 15-day jail sentence he received[5] was half of what he could have received if he had instead committed a reckless driving misdemeanor. Finally, insofar as the "likelihood of recurring criminal conduct" is concerned, § 4A1.2 cmt. n.12(A), the PSR confirms that Turnick does not have a record of other similar traffic violations. Therefore, a fair-minded analysis of *any* conceivable "common sense" factor, § 4A1.2 cmt. n.12(A) confirms that Turnick's DWAI infraction was, at the very least, not categorically more serious than reckless driving.

---

[5] Nine days before that sentencing proceeding, Turnick received a two-year prison sentence in connection with another case involving drug and weapons possession charges. PSR ¶ 67. (The three criminal history points assessed for that felony sentence were not disputed below and are not challenged in this appeal.)

## II. The government's breach of the plea agreement amounted to plain error.

"A sentence imposed pursuant to a plea agreement 'must follow the reasonable understandings and expectations of the defendant with respect to the bargained-for sentence.'" *United States v. Palladino*, 347 F.3d 29, 33 (2d Cir. 2003) (quoting *United States v. Ferrara*, 954 F.2d 103, 105 (2d Cir. 1992)).

Interpretations of plea agreements are ordinarily reviewed *de novo*. *United States v. Wilson*, 920 F.3d 155, 162 (2d Cir. 2019). *See United States v. Vaval*, 404 F.3d 144, 155 (2d Cir. 2005) ("[I]n order to preserve the integrity of plea bargaining procedures and public confidence in the criminal justice system, a defendant is generally entitled to the enforcement of a plea agreement without showing a tangible harm resulting from a breach."). However, "[a]n argument that the government breached a plea agreement is reviewed for plain error" where "the defendant failed to object in the district court." *United States v. Rivera*, 115 F.4th 141, 146 (2d Cir. 2024).

### A. The government's breach

"[B]ecause plea bargains require defendants to waive fundamental constitutional rights, prosecutors are held to meticulous standards of performance." *Vaval*, 404 F.3d at 152-53. *See Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such

promise must be fulfilled."). Accordingly, this Court "construe[s] plea agreements strictly against the government and do[es] not 'hesitate to scrutinize the government's conduct to ensure that it comports with the highest standard of fairness.'" *Vaval*, 404 F.3d at 152. (quoting *United States v. Lawlor*, 168 F.3d 633, 637 (2d Cir. 1999)). *See Rivera*, 115 F.4th at 146, 151 (2d Cir. 2024) (noting that "the government enjoys disproportionate bargaining power in plea agreement negotiations" and "plays an outsized, and sometimes even a decisive, role at sentencing.").

"To determine whether a plea agreement has been breached, a court must look to what the parties reasonably understood to be the terms of the agreement," *Vaval*, 404 F.3d at 152, and "where the government has chosen to bind itself to advocating for a stipulated Guidelines range, it must hold itself to that promise," *Rivera*, 404 F.3d at 150. In this case, the plea agreement confirms that Turnick waived important constitutional rights and agreed to plead guilty to a superseding information in exchange for, among other things, the government's promise to stand by the "Stipulated Guidelines Range." A.51-52. It is equally clear that, even though the government's sentencing submission advised that it would uphold the promise set forth in the plea agreement, it abandoned that promise at sentencing

when the district court asked if it had any objections "to the Guidelines calculation or anything else in the PSR."[6] A.98.

In *United States v. Amico*, 416 F.3d 163, 165 (2d Cir. 2005), the parties agreed to a certain Guidelines calculation, but the government subsequently filed a sentencing submission advising that it would "adopt[] the findings of [a] revised [PSR]," which contained a different calculation with additional offense level enhancements. Unlike this case, the government's "temporary breach" occurred in a pre-sentencing document, rather than during the sentencing proceeding, and the government subsequently "cured" that breach by filing amended statements in support of the stipulated calculation. *Id.* at 165. But *Amico* is relevant here because it confirms the obvious point that the adoption of a Guidelines calculation that contradicts a previously stipulated calculation constitutes a breach.

Along similar lines, this Court held, in *Palladino*, 347 F.3d at 33-34, that the government breached a plea agreement where it argued in favor of a sentencing enhancement "on the basis of information that was known to it at the time of the agreement[.]" As in *Palladino*, there was no "new information" presented in this

---

[6] This Court "need not find that the Government acted in bad faith in order to hold that [Turnick's] reasonable expectations were violated." *Wilson*, 920 F.3d at 167. *See also Rivera*, 115 F.4th at 150.

case regarding Turnick's DWAI infraction prior to sentencing.[7] *See Wilson*, 920 F.3d at 166-67. To the contrary, the government's own sentencing submission advised that it would "stand[] by its stipulation in the plea agreement," A.87 n.6, and there were no circumstances present to justify its subsequent failure to do so.

### B. The "plain error" standard

In order to establish "plain error" under Fed. R. Crim. P. 52(b), a criminal defendant-appellant must establish that the error complained of: (1) is plain; (2) affects substantial rights; and (3) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732-736 (1993). An error is considered "plain" if it is "'clear' or, equivalently, 'obvious.'" *Id.* at 734. In this case, the government explicitly bound itself to the Stipulated Guidelines Range, filed a sentencing submission in which it expressed an intent to uphold that promise, but then stated that it had no objections to the PSR's contrary Guidelines calculation at sentencing. This error was "so plain that the [district court] and prosecutor were derelict in countenancing it, even absent [defense counsel's] timely assistance in detecting it." *United States v. Villafuerte*, 502 F.3d

[7] While the plea agreement would have permitted the government "to seek an appropriately adjusted Guidelines range if it [were] determined based upon *information not contained in this Agreement* that [Turnick's] criminal history category is different from that set forth above," A.52 (emphasis added), the difference between the stipulated calculation and the PSR's calculation was due to differing legal conclusions.

204, 209 (2d Cir. 2007) (internal quotation omitted). *See, e.g., Amico*, 416 F.3d at 165; *Palladino*, 347 F.3d at 34.[8] Moreover, the government's breach affected Turnick's substantial rights. For the reasons presented above in Section I, *supra*, the district court's rejection of the stipulated Guidelines calculation and adoption of the PSR's calculation resulted in "the application of an incorrect, higher Guidelines range" and a prison sentence at the very top of that upwardly adjusted range. *Wilson*, 920 F.3d at 167 (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 201 (2016)). Finally, as the Supreme Court observed in *Puckett v. United States*, 556 U.S. 129, 142-43 (2009), "when the Government reneges on a plea deal, the integrity of the system may be called into question[.]"[9] In other words, permitting the government to elicit a guilty plea in exchange for an explicit promise which it then fails to keep would "seriously affect the fairness, integrity, [and] public reputation of judicial proceedings." *Olano*, 507 U.S. at 736.

---

[8] The opposite was true in *Rivera*, 115 F.4th at 144, where this Court recently held that "the government breaches a plea agreement when it stipulates to a sentence range based on information 'available' to it, then advocates for a substantially higher sentence based on criminal history information that it could have readily obtained." *See id.* at 147-48. Because there was previously no "Circuit guidance on how to read the term 'available,'" the *Rivera* panel determined that the government's breach "was not sufficiently 'clear' or 'obvious' as to be 'plain' error." *Id.* at 151.

[9] In this case, unlike *Puckett*, 556 U.S. at 143, there are no "countervailing factors" relating to the fourth prong of plain error review.

### C. Remedy

In *Puckett*, 556 U.S. at 137, the Supreme Court confirmed that, where the government fails to adhere to the material terms of a plea agreement, "the defendant is entitled to seek a remedy." In this case, "specific performance of the [plea] agreement" is the most appropriate remedy. *See Vaval*, 404 F.3d at 155. While the government "violated essential provisions of the plea agreement," its breach did not result in an irreversible harm that could only be mitigated by allowing Turnick to withdraw his plea. *Id.* at 156. Rather, because the plea agreement itself has not been "hopelessly tainted by the introduction of new evidence," *Palladino*, 347 F.3d at 35, a "remand to a different judge for resentencing would cure the breach[.]" *See Wilson*, 920 F.3d at 168 ("In cases where specific performance is the appropriate remedy, we typically remand the case for resentencing before a different district judge because '[t]he effect of the government's breach of its commitment is difficult to erase' and 'it is likely that the same judge would reach the same result as he reached before.'") (quoting *United States v. Enriquez*, 42 F.3d 769, 772 (2d Cir. 1994)).

## Conclusion

The case should be remanded to the Southern District of New York for resentencing.

Dated: November 13, 2025
New York, New York

/s/ Lucas Anderson
Lucas Anderson
*Of Counsel*
Rothman, Schneider,
Soloway & Stern, LLP
100 Lafayette Street, Ste. 501
New York, New York 10013
(212) 571-5500

## Certificate of Compliance

This brief complies with Rule 32(a) of the Federal Rules of Appellate Procedure and with Rule 32.1 of the Local Rules of this Court. This brief contains 6,846 words, including footnotes and headings, and is printed in proportionally spaced 14-point Times New Roman typeface.

Dated: November 13, 2025
New York, New York

/s/ Lucas Anderson
Lucas Anderson
*Of Counsel*
Rothman, Schneider,
Soloway & Stern, LLP
100 Lafayette Street, Ste. 501
New York, New York 10013
(212) 571-5500