# 25-437-cr

## United States Court of Appeals

### for the

### Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

JUSTIN TURNICK,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANT-APPELLANT

LUCAS ANDERSON
*Of Counsel*
ROTHMAN, SCHNEIDER, SOLOWAY
  & STERN, LLP
*Attorneys for Defendant-Appellant*
100 Lafayette Street, Suite 501
New York, New York 10013
(212) 571-5500

CP COUNSEL PRESS    (800) 4-APPEAL • (390830)

## Table of Contents

Table of Authorities......................................................................................... ii

Introduction ...................................................................................................1

Argument.......................................................................................................1

    I.    The government fails to credibly defend the district court's ruling under
U.S.S.G. § 4A1.2................................................................................ 1

        A.  Turnick's DWAI infraction falls under § 4A1.2(c)(1). ............................. 1

        B.  The district court abused its discretion. ..................................................... 6

    II.  The government's breach of the plea agreement amounts to a plain error. . 13

    III. The government has breached the plea agreement by explicitly arguing
against a stipulation it drafted in exchange for Turnick's guilty plea.......... 18

Conclusion...................................................................................................21

Certificate of Compliance ..............................................................................22

i

## Table of Authorities

### Cases

**Page(s)**

*Norton v. Sam's Club*,
   145 F.3d 114 (2d Cir. 1998) ........................................................... 4

*People v. Bulgin*,
   908 N.Y.S.2d 817 (Bronx Sup. Ct. 2010) ............................. 10, 11

*People v. Dipoumbi*,
   889 N.Y.S.2d 506, 2009 WL 1395826 (Crim. Ct. N.Y. Co. 2009) ............ 10

*People v. Orlofsky*,
   332 N.Y.S.2d 778 (Saratoga Cty. Ct. 1972) .......................... 10, 11

*United States v. Afriyie*,
   27 F.4th 161 (2d Cir. 2022) ........................................................ 4

*United States v. Amico*,
   416 F.3d 163 (2d Cir. 2005) ..................................................... 18

*United States v. Colon*,
   220 F.3d 48 (2d Cir. 2000) ....................................................... 18

*United States v. DeJesus-Concepcion*,
   607 F.3d 303 (2d Cir. 2010) ................................................... 8-9

*United States v. Enriquez*,
   42 F.3d 769 (2d Cir. 1994) .................................................. 16, 18

*United States v. Gaviria*,
   49 F.3d 89 (2d Cir. 1995) ......................................................... 18

*United States v. Griswold*,
   57 F.3d 291 (3d Cir. 1995) ....................................................... 19

*United States v. Hardeman*,
   933 F.2d 278 (5th Cir. 1991) ...................................................... 8

## Table of Authorities (Cont'd)

### Cases

Page(s)

*United States v. Haverkamp*,
  958 F.3d 145 (2d Cir. 2020) ........................................................ 16

*United States v. Landa*,
  642 F.3d 833 (9th Cir. 2011) ........................................................ 3

*United States v. Lawlor*,
  168 F.3d 633 (2d Cir. 1999) ................................................... 15, 17

*United States v. Martinez-Santos*,
  184 F.3d 196 (2d Cir. 1999) ................................................. 7, 8, 11

*United States v. Matta*,
  777 F.3d 116 (2d Cir. 2015) ........................................................ 16

*United States v. Morales*,
  239 F.3d 113 (2d Cir. 2000) ............................................... 9, 11-12

*United States v. Olano*,
  507 U.S. 725 (1993) .................................................................... 17

*United States v. Paredes*,
  185 F.Supp.3d 287 (E.D.N.Y. 2016) ......................................... 6, 7

*United States v. Perez*,
  No. 24 Cr. 368 (JHR), 2025 WL 2047829 (S.D.N.Y. July 22, 2025) ....... 3, 5

*United States v. Potes-Castillo*,
  638 F.3d 106 (2d Cir. 2011) ........................................ 1, 2, 3, 4-5

*United States v. Rainford*,
  110 F.4th 455 (2d Cir. 2024) ........................................................ 3

*United States v. Riera*,
  298 F.3d 128 (2d Cir. 2002) ........................................................ 13

# Table of Authorities (Cont'd)

## Cases

**Page(s)**

*United States v. Rivera*,
115 F.4th 141 (2d Cir. 2024) ........................................................ 14, 15, 16

*United States v. Rodriguez-Castro*,
641 F.3d 1189 (9th Cir. 2011) .................................................................. 19

*United States v. Sanders*,
205 F.3d 549 (2d Cir. 2000) ............................................................... 11, 12

*United States v. Sineneng-Smith*,
590 U.S. 371 (2020) ................................................................................... 4

*United States v. Ubiera*,
486 F.3d 71 (2d Cir. 2007) ....................................................................... 12

*United States v. Valente*,
915 F.3d 916 (2d Cir. 2019) ............................................................. 6, 8, 13

*United States v. Valente*,
688 Fed. App'x 76 (2d Cir. 2017) .............................................................. 2

*United States v. Vaval*,
404 F.3d 144 (2d Cir. 2005) ..................................................................... 15

*United States v. Walia*,
No. 14 Cr. 23 (MKB), 2016 WL 4257347 (E.D.N.Y. Aug. 11, 2016) ..... 6, 7

*United States v. Wilson*,
920 F.3d 155 (2d Cir. 2019) ..................................................................... 15

## Statutes and Sentencing Guidelines

N.Y. Penal Law § 165.15(3) ........................................................... 12, 13

N.Y. VTL § 155 ............................................................................................ 5

**<u>Table of Authorities (Cont'd)</u>**

**Statutes and Sentencing Guidelines**

**Page(s)**

N.Y. VTL § 1192(1) ................................................................ 4, 5, 12

N.Y. VTL § 1193(1)(a) ................................................................ 5

N.Y. VTL § 1212 ................................................................ 10

U.S.S.G. § 4A1.2(c) ................................................ 1, 2, 3, 6, 11, 12, 17

U.S.S.G. § 4A1.2(c)(1) ................................................................ 1, 2

U.S.S.G. § 4A1.2(c)(2) ................................................................ 3

U.S.S.G. § 4A1.2 cmt. n.5 ................................................ 3, 4, 5, 6

U.S.S.G. § 4A1.2 cmt. n.12(A) ................................................ 6, 13

**Introduction**

This brief is respectfully submitted in reply to the government's February 12, 2026 response.

**Argument**

I. **The government fails to credibly defend the district court's ruling under U.S.S.G. § 4A1.2(c).**

    A. **Turnick's DWAI infraction falls under § 4A1.2(c)(1).**

        1. **There is a clear conflict between the text of § 4A1.2(c) and an application note purporting to create a category of alcohol-related driving offenses that, like felonies, are always counted.**

In *United States v. Potes-Castillo*, 638 F.3d 106, 111-12 (2d Cir. 2011), this Court held that "it would be plainly inconsistent with section 4A1.2(c) to argue that DWAI offenses, although they are 'misdemeanor [or] petty offenses,' are always counted and can never fit within the exclusion explicitly provided in [§] 4A1.2(c)(1)." This sentence was quoted three times in Turnick's opening brief—once with italic emphasis. Br. 9, 16, 19.[1] The government pointedly avoids any mention of this highly relevant statement of law.[2]

---

[1] "Br." refers to Turnick's opening brief, and "A" refers to the appendix filed in conjunction therewith (Dkt. 27-28). "Resp." refers to the government's response brief (Dkt. 35). "PSR" refers to the presentence report filed under seal (Dkt. 31).

[2] Wholesale omissions of relevant legal issues are particularly notable here, where the government dedicates a substantial percentage of its response brief to facts that have nothing to do with the issues presented on appeal. Resp. 2-6, 11-12. To the

1

Just as it did in *Potes-Castillo*, the government argues that an application note has succeeded in "remov[ing] DWAI offenses from the category of 'misdemeanor and petty offenses,' where DWAI would appear to reside on the face of section 4A1.2(c), and creat[ing] a new category of alcohol-related driving offenses that, like felonies, are always counted." 638 F.3d at 111. *See* Resp. 17 ("This Court could affirm the judgment on the ground that the District Court's decision to count the DWAI [infraction] in Turnick's criminal history score was consistent with the Sentencing Commission's current guidance for applying U.S.S.G. § 4A1.2."). But like the Sentencing Commission, the government fails to account for this Court's binding determination that "the face of 4A1.2(c)," 638 F.3d at 111—which was *not* amended after *Potes-Castillo*—precludes any interpretation that would remove a category of "misdemeanor [or] petty" DWAI offenses from § 4A1.2(c)(1).[3]

---

extent the government expects this Court's resolution of the legal questions that have been presented to be influenced by unrelated facts, it is worth noting that those same facts drove the stipulated Guidelines range set forth in the government-drafted plea agreement. *See* Resp. 6.

[3] The Court did not "acknowledge[]" "uncertainty" relating to this issue in *United States v. Valente*, 688 Fed. App'x 76 (2d Cir. 2017) (summary order). Resp. 17-18. To the contrary, because the district court there "assumed that *Potes-Castillo* was controlling"—a key feature of published appellate opinions that have not been overturned *en banc* or by the Supreme Court—the *Valente* panel observed that there was no need to address the government's claim that an amended application note had abrogated this Court's interpretation of § 4A1.2(c).

Because the Sentencing Commission did not amend the text of the relevant Guideline, it failed to "abrogate *Potes-Castillo*." Resp. 19. *See United States v. Perez*, No. 24 Cr. 368 (JHR), 2025 WL 2047829, at *7 (S.D.N.Y. July 22, 2025) ("[A]mending Application Note 5 did not change the fact that, under the plain language of the Guideline, 'felonies are the only class of sentences always counted.'") (quoting *Potes-Castillo*, 638 F.3d at 109). Instead, the Commission transformed a previously "ambiguous" commentary provision, *Potes-Castillo*, 638 F.3d at 110, into one that now unambiguously conflicts with the Guideline it purports to interpret. In that respect, it is notable that the government's brief also does not present an argument relating to the more general principle that Guidelines commentary "is authoritative unless it . . . is inconsistent with, or a plainly erroneous reading of," the relevant guideline.[4] *United States v. Rainford*, 110 F.4th 455, 475 (2d Cir. 2024) (quoted Br. 19). *Cf. United States v. Landa*, 642 F.3d 833, 836 (9th Cir. 2011) ("Because Note 5 states that convictions similar to a 'driving while intoxicated or under the influence' offense *are* counted and the text of (c)(2) states that juvenile status offenses are *never* counted, a potential conflict exists between the text and the commentary.").

---

[4] Instead of responding to presented issues, the government purports to grapple with a hypothetical argument that was not presented or suggested in Turnick's opening brief. *See* Resp. 20 ("This Court did not hold that any text in U.S.S.G. § 4A1.2(c) was so unambiguously clear that the Guideline required no interpretive assistance from the Commission's application notes.").

"Published panel decisions . . . are binding on future panels unless they are reversed *en banc* or by the Supreme Court." *United States v. Afriyie*, 27 F.4th 161, 168 (2d Cir. 2022) (internal quotation omitted). The relevant holding of *Potes-Castillo*, 638 F.3d at 111, is binding, and this Court should deem waived any argument relating to that holding which the government may seek to present for the first time at oral argument. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal."). *See also United States v. Sineneng-Smith*, 590 U.S. 371 (2020) (relating to the party presentation principle).

### 2. By its plain terms, the amended version of Application Note 5 does not apply to VTL § 1192(1).

Even if the amended version of § 4A1.2 cmt. n.5 could be said to have overturned this Court's established holding that, "in the absence of Application Note 5, it would be plainly inconsistent with section 4A1.2(c) to argue that DWAI offenses . . . are always counted," *Potes-Castillo*, 638 F.3d at 111, that application note is, by its plain terms, irrelevant to this case.

In his principal brief, Turnick observed that New York VTL § 1192(1) violations "do not result in 'convictions' and do not require proof that the defendant was 'driving' at the time of his or her impairment." Br. 17-18. *See* Br.

4

19-20.[5] The government acknowledges that one may violate § 1192(1) without "driving" a vehicle. Resp. 14. And there does not appear to be a dispute that a § 1192(1) violation "shall be a traffic infraction," which "is not a crime and the punishment imposed therefor shall not be deemed for any purpose a penal or criminal punishment." VTL §§ 155, 1193(1)(a). *See* Br. 20. In fact, the government's only response to Turnick's arguments on this point relates to what the Sentencing Commission may have "intended" to do when it amended a concise and specifically phrased application note.[6] Resp. 21. But regardless of what the Commission intended to do, it enacted a commentary provision that applies to "*[c]onvictions* for *driving* while intoxicated or under the influence (and similar offenses by whatever name they are known)." § 4A1.2 cmt. n.5 (emphasis added). It is therefore (perhaps unintentionally) not applicable to VTL § 1192(1) infractions.

---

[5] Turnick also highlighted the fact that, as the district court recently observed in *Perez*, 2025 WL 2047829, at *6, the 2012 revision of Application Note 5 sought to "resolve[] differences among circuits regarding when prior sentences for the *misdemeanor offenses* of driving while intoxicated and driving under the influence (and any similar offenses by whatever name they are known) are counted." Br. 19-20.

[6] The government does not assert that the specific facts of a defendant's prior VTL § 1192(1) infraction are relevant to the question of whether that statute is covered under the current version of § 4A1.2 cmt. n.5.

**B.      The district court abused its discretion.**

Regardless of how much discretion sentencing courts are provided with respect to the factors they are entitled or required to consider under § 4A1.2(c) and Application Note 12(A), the district court's implicit determination that Turnick's DWAI infraction was, "without qualification or reservation," more serious that a reckless driving offense, *United States v. Valente*, 915 F.3d 916, 921 (2d Cir. 2019), was unreasonable.

> **1.      Sentencing courts do not have unlimited discretion with respect to the selection of factors to consider under § 4A1.2 and Application Note 12.**

The district court did not at any point reference the critical issue of whether Turnick's infraction was "similar to" an offense listed under § 4A1.2(c)(1). Instead, the court briefly compared the facts set forth in paragraph 66 of the PSR with two of the district court cases cited in Turnick's sentencing submission— *United States v. Paredes*, 185 F.Supp.3d 287 (E.D.N.Y. 2016), and *United States v. Walia*, No. 14 Cr. 213 (MKB), 2016 WL 4257347 (E.D.N.Y. 2016). A.98, 101. (As previously noted (Br. 18), the district court's brief reference to these facts appears to have been an alternative to the district court's determination that the 2012 amendment to § 4A1.2 cmt. n.5 is controlling. A.99-102.)

Unlike the district court, the government acknowledges the various factors listed under § 4A1.2 cmt. n.12 and references the central question of whether

Turnick's VTL infraction was "similar to"—or, conversely, "categorically more serious than"—the crime of reckless driving. Resp. 15-16. But the government does not offer a response to Turnick's presented arguments with respect to those factors, *see* Br. 21-22, 24, or otherwise attempt to apply those factors to this case. Instead, the government defends the district court's reliance on nothing more than a cursory comparison of the facts of this case with those at issue in *Paredes* and *Walia*.

Under the government's interpretation of the law, *see* Resp. 16, district courts would have unlimited discretion to engage in outcome-driven cherry-picking by selecting only one factor to consider in deciding whether a prior offense is categorically more serious than a § 4A1.2(c)(1) listed offense. But that interpretation is difficult to square with the government's cited authorities. For example, in *United States v. Martinez-Santos*, 184 F.3d 196, 206 (2d Cir. 1999) (cited Resp. 16), this Court "endorse[d] a multifactor interpretation" and vacated a defendant's sentence where the district court had "apparently relied on only one factor in arriving at the conclusion that [the defendant's] prior convictions were not similar to the Listed Offenses." This holding, paired with Judge Feinberg's explanation that "reliance upon one criterion alone . . . is not the best way to distinguish between listed and unlisted crimes," *ibid.*, makes as clear as any binding decision could that the district court abused its discretion here.

7

While avoiding these aspects of the *Martinez-Santos* opinion, the government suggests that it actually stands for the proposition that a sentencing court "may consider 'any . . . factor the court reasonably finds relevant[.]'" Resp. 16 (quoting 184 F.3d at 206). If so, this would presumably mean the district court here was entitled to overlook *all* of the application note 12 factors and rely entirely on any other single factor it "reasonably f[ound] relevant." *Ibid.* But the government's quotation from *Martinez-Santos* does not accurately reflect the substance of the quoted sentence: "[W]e direct the district court to read 'similar' to encompass the factors listed in *Hardeman* as well as any other factor the court reasonably finds relevant in comparing prior offenses and Listed Offenses." 184 F.3d at 206 (referencing *United States v. Hardeman*, 933 F.2d 278 (5th Cir. 1991)).

The government also cites *Valente*, 915 F.3d at 922, as standing for the proposition that Application Note 12(A) to § 4A1.2 "merely 'identifies the factors . . . that a district court *may* consider'; it does not require the court to consider all, or any, of those factors specifically." Resp. 16. But the sentencing judge in *Valente* considered two of the factors enumerated under the application note (and also "considered other factors"). 915 F.3d at 921-22. Moreover, as with its selective quotation from *Martinez-Santos*, the government conspicuously omits the words "also" and "other" from *Valente*'s statement regarding "any . . . factor the court reasonably fines relevant." Resp. 16. And the government's quotation from *United*

8

*States v. DeJesus-Concepcion*, 607 F.3d 303 (2d Cir. 2010), is equally misleading. *Compare* Resp. 25 ("[T]he District Court could consider 'any . . . relevant factor.'") (quoting 607 F.3d at 305), *with* 607 F.3d at 305 ("It may *also* consider any *other* relevant factor.") (emphasis added). Upon review of the actual text of this Court's opinions, there is no support for a claim that the district court here was entitled to: (1) overlook *all* of the factors enumerated in the § 4A1.2 commentary, *or* (2) rely on one single factor. It certainly was not entitled to do both of those things at once.

> **2.     The record does not support a finding that Turnick's DWAI was "without qualification or reservation" more serious than a reckless driving offense.**

In rejecting Turnick's argument at sentencing, the district court erroneously (albeit implicitly) determined that, based on the limited facts set forth in paragraph 66 of the PSR, Turnick's DWAI infraction was categorically—that is, "without qualification or reservation"—more serious than a reckless driving offense. *United States v. Morales*, 239 F.3d 113, 118 n.5 (2d Cir. 2000).

Going beyond the limited reasoning provided by the district court, the government posits that Turnick's infraction "involved an extreme risk of danger to others (more than the mere 'unreasonable endangerment' of others that is required for reckless driving) because [he] fell unconscious while he was driving." Resp. 28. But the logic of this argument requires one to entirely ignore (yet again) a

9

plainly relevant legal principle that was presented in the opening brief with italic emphasis:

> New York courts have interpreted the reckless driving statute to require that the defendant created an actual and apparent, as opposed to a theoretical, danger to the person or property of another. *At a minimum, this standard necessitates evidence that pedestrians or other drivers were affected,* though *more even than the fact of a collision must be found* in order to sustain a conviction of reckless driving.

*Perez*, 2025 WL 2047829 at *9 (cleaned up) (block-quoted with emphasis at Br. 23-24).[7]

Moreover, the loosely summarized facts set forth in the PSR do not support the government's description of an "extreme risk of danger." Resp. 28. Among other issues, the record contains *no* information about: how far Turnick drove before his car crashed; how fast he was traveling; whether he ever, for example, "crossed [a] double-yellow line and drove on the wrong side of the road," *Perez*, 2025 WL 2047829, at *1; or *whether any other person was in the area at the time he was driving*. While the government's response inexplicably supplements the

---

[7] This portion of the *Perez* opinion cites New York State court decisions in *People v. Dipoumbi*, 889 N.Y.S.2d 506, 2009 WL 1395826, at *3 (N.Y. City Crim. Ct. April 28, 2009), *People v. Bulgin*, 908 N.Y.S.2d 817, 826 (Bronx Sup. Ct. 2010), and *People v. Orlofsky*, 332 N.Y.S.2d 778, 781 (Saratoga Cty. Ct. 1972). *See also* VTL § 1212(a). In addition, the *Perez* opinion notes that New York courts have found insufficient evidence of "reckless driving" in cases involving, among other dangerous actions, "swerving back and forth across multiple lanes of traffic" while intoxicated, and driving through a red light while impaired by alcohol. 2025 WL 2047829 at *10.

10

facts provided in the PSR,[8] it does not and cannot point to anything suggesting that Turnick's conduct created an actual danger to any other person. *See Bulgin*, 908 N.Y.S.2d at 826 ("[D]efendant drove five to 15 miles above the speed limit and failed to stop at one stop sign and two steady red lights, during a period of some two minutes, but there was no evidence that any pedestrians or other drivers were affected in any way."). Thus, even if it were not true that "more than the fact of a collision must be found in order to sustain a conviction of [r]eckless [d]riving," *Orlofsky*, 332 N.Y.S. 2d at 781, the record could not support a finding that Turnick's DWAI was categorically more serious than reckless driving.

### 3. The *de novo* standard of review applies to every aspect of the district court's ruling.

As previously noted, the *de novo* standard of review applies to questions presented under § 4A1.2(c) where the statute under review "punishes only one basic form of conduct." Br. 11 (quoting *Morales*, 239 F.3d at 118, *Martinez-Santos*, 184 F.3d 196, and *United States v. Sanders*, 205 F.3d 549 (2d Cir. 2000)). In this respect, the New York DWAI statute is more analogous to "fare-beating" or

---

[8] There is no indication in the PSR as to what time of day or night Turnick's vehicle went off the road, when law enforcement officials responded to the accident, or how those officials first learned of the accident. Yet the government's brief states that officers responded in the "evening" after receiving an "emergency call." Resp. 13.

11

"transit scalping" than to broadly-defined crimes like "harassment." *Morales*, 239 F.3d at 117-18.

In *United States v. Ubiera*, which the government cites for other purposes, Resp. 15, 16, this Court observed that a "shoplifting" offense "punishes only one basic form of conduct." 486 F.3d 71, 74 (2d Cir. 2007) (quoting *Morales*, 239 F.3d at 117-18). And in *Sanders*, 205 F.3d at 551, the defendant was previously convicted under New York P.L. § 165.15(3), a "fare-beating" statute that applies whenever a person:

> With intent to obtain railroad, subway, bus, air, taxi[,] or any other public transportation service without payment of the lawful charge therefor, or to avoid payment of the lawful charge for such transportation service which has been rendered to him, [] obtains or attempts to obtain such service[,] or avoids or attempts to avoid payment therefor by force, intimidation, stealth, deception[,] or mechanical tampering, or by unjustifiable failure or refusal to pay[.]

*See* 205 F.3d at 551 n.4. Subsequently, in *Morales*, 239 F.3d at 117, the Court noted that this fare-beating statute was sufficiently "narrow in scope" to require *de novo* review under § 4A1.2(c). These precedents confirm that, even if "there might be slight variations" in the ways one may commit an offense, that does not mean the relevant statute encompasses a broad range of conduct comparable to loosely defined crimes such as "harassment." *Id.* at 117-18. While the government now accentuates what it describes as "the capaciousness of [the] statutory terms 'operate' and 'impaired,'" as they are used in the VTL, Resp. 22, the number of

ways one may conceivably violate § 1192(1) is smaller even than the number of distinct acts punishable under the P.L. § 165.15(3) statute analyzed in *Sanders* and reproduced above.

Upon further review of this Court's opinion in *Valente*, Turnick recognizes that, when a district court chooses to "consider[] the particular conduct of the defendant *as to the factors listed in Application Note 12(A)* to U.S.S.G. § 4A1.2," this Court will "give due difference to a court's application of the Guidelines to the facts." 915 F.3d at 921 (emphasis added). As such, the district court's ruling *would* have been subject to a mixed standard of review if the court had applied the facts of Turnick's DWAI to enumerated factors (perhaps in addition to other factors) in an effort to determine whether that infraction was similar to or categorically more serious than reckless driving or another listed offense. But that simply did not happen here.

## II. The government's breach of the plea agreement amounts to a plain error.

The government notes that, in order "[t]o determine whether a plea agreement has been breached," this Court "look[s] to the reasonable understanding of the parties as to the terms of the agreement." Br. 29 (quoting *United States v. Riera*, 298 F.3d 128, 133 (2d Cir. 2002)). Here, there is no basis to suppose Turnick reasonably understood that, after the government agreed that "zero criminal history points are warranted" for his prior DWAI infraction, A.50, it

13

would then appear at sentencing to: (1) state that it had no objection to a contrary determination in the PSR; (2) fail to mention its contractual stipulation; and (3) advise the district court that it had not even been aware of Turnick's prior DWAI at the time it entered into the plea agreement. *See United States v. Rivera*, 115 F.4th 141, 144 (2d Cir. 2024) (noting that plea agreements may reduce claims of unfair surprise "only if the government actually keeps its promises.").

The government recognizes that Turnick's "reasonable understanding" "was that the agreement bound the parties' positions on the Guidelines." Resp. 32-33. But the government's claim that it "stood by the plea agreement notwithstanding the Probation Office's different Guidelines calculation[]," Resp. 33 n.8, simply does not comport with what occurred at the sentencing hearing. It is abundantly clear that, at the time of sentencing, the district court believed Turnick was the only party advocating for the position that his DWAI infraction should carry zero criminal history points. Indeed, at the outset of the proceeding, as the district court recited the Guidelines calculation set forth in the PSR, it stated, "I realize the Defendant has an issue with" the PSR's criminal history calculation. A.96.

The government did nothing to dispel the district court's misapprehension. For example, the government did not mention that it had stipulated that "zero criminal history points are warranted" for Turnick's DWAI infraction. A.50. To the contrary, when the court asked if the government had an objection to the PSR's

14

Guidelines calculation—which was higher than the stipulated calculation—counsel

for the government said, "We do not." A.98. *See Rivera*, 115 F.4th at 150

("[W]here the government has chosen to bind itself to advocating for a stipulated

Guidelines range, it must hold itself to that promise."). At a later point, the court

asked the government: "Were you aware at the time you entered into this guilty

plea about the DWAI, the driving under the influence, or is that something the

Government didn't know about." A.103. In response, counsel for the government

said: "No, we weren't aware of that, Your Honor." A.103-04.[9] In light of these

statements, reaching for an affirmance based on a footnote in the government's

sentencing submission (of which the district court was clearly unaware), would

severely undermine the notion that plea agreements are construed "strictly against

the government," *United States v. Wilson*, 920 F.3d 155, 162 (2d Cir. 2019); that

"prosecutors are held to meticulous standards of performance," *United States v.*

*Vaval*, 404 F.3d 144, 152-53 (2d Cir. 2005); and that this Court will not "hesitate

to scrutinize the government's conduct to ensure that it comports with the highest

standard of fairness," *United States v. Lawlor*, 168 F.3d 633, 637 (2d Cir. 1999).

---

[9] The government now asserts that it "either misheard or misunderstood the [district court's] question." Resp. 11 n.3. But as noted in the opening brief, the breach of a plea agreement frustrates a criminal defendant's reasonable expectations regardless of whether it is intentional or inadvertent. Br. 27 & n.6.

The same facts establishing the "plainness" of the government's error confirm that the government's breach also affected Turnick's substantial rights.[10] "The government plays an outsized, and sometimes even a decisive role, at sentencing," *Rivera*, 115 F.4th at 151, and if the government had "adhered to its commitment" there is "some likelihood that the judge would never have given serious thought," *United States v. Enriquez*, 42 F.3d 769, 772 (2d Cir. 1994), to the addition of a criminal history point for Turnick's DWAI infraction.

The cited portions of the sentencing transcript confirm that the district court was unfamiliar with, or at least had forgotten about: (1) the relevant stipulation in the plea agreement; and (2) the brief portion of the government's sentencing memorandum relating to that stipulation. Given this lack of familiarity, the fact that the district court judge "stated that he had read" the government's submission, Resp. 34, does little to indicate that he was in fact aware of the government's position. (This is particularly true where, in response to subsequent questioning, the government advised the court that it had not even known of Turnick's DWAI. A.103-04.) And the fact that the government "repeatedly" stated "that it was seeking a sentence of 235 months' imprisonment, which was within the Stipulated

---

[10] Because the government's breach occurred during the sentencing proceeding, and because "the cost of correcting [this] unpreserved error" would not be "as great as in the trial context," a "relaxed" form of plain error review should be applied to this issue. *United States v. Matta*, 777 F.3d 116, 121 (2d Cir. 2015). *See United States v. Haverkamp*, 958 F.3d 145, 149 (2d Cir. 2020).

Guidelines Range set forth in the plea agreement," Resp. 11, is entirely irrelevant because the government's requested sentence was also within the higher advisory range calculated in the PSR.[11] *See also* Resp. 29, 33, 35.

Looking to the sentencing transcript as a whole, it is clear that, as a result of the government's breach, the district court believed Turnick was the only party disputing the Probation Office's application of § 4A1.2(c). "Given the government's often decisive role in the sentencing context," *Lawlor*, 168 F.3d at 637, there is an unacceptable chance that this breach affected the outcome of the proceeding, and a failure to correct it would "seriously affect the fairness, integrity, [and] public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 736 (1993).[12]

_____

[11] The stipulated calculation provided for an advisory range of 188 to 235 months' imprisonment. A.51. The Probation Office's calculation, which was adopted by the district court at sentencing, provided for an advisory range of 210 to 262 months. A.102. *See* PSR ¶ 133.

[12] With respect to an appropriate remedy, the government quibbles with Turnick's reference to this Court's opinions in which "specific performance" of a plea agreement involved reassignment to a different district court judge for resentencing. Resp. 37-38 (deeming such a remedy to be "particularly inappropriate."). But the caselaw confirms that this remedy is *typically* ordered where specific performance is possible. *See* Br. 30. *See also Lawlor*, 168 F.3d at 638. This is not because the government's breach "resulted in the introduction of evidence that the district court would not have considered but for the breach." Resp. 37. Rather, it is because "[t]he effect of the government's breach of its commitment is difficult to erase," because "the judge's decision . . . was based on his assessment of the facts," and because "it is likely that the same judge would

17

**III.    The government has breached the plea agreement by explicitly arguing against a stipulation it drafted in exchange for Turnick's guilty plea.**

Having breached the plea agreement at sentencing, the government now foregoes an opportunity to "cure" that breach, *see United States v. Amico*, 416 F.3d 163, 165 (2d Cir. 2005), in order to argue against the position it promised to maintain in exchange for Turnick's guilty plea.

The undersigned is aware that, in *United States v. Colon*, 220 F.3d 48, 52 (2d Cir. 2000), the Court held that a similarly phrased plea agreement "cannot be reasonably understood to prohibit" the government from taking a position contrary to its contractual stipulations on appeal. However, Turnick respectfully contends that, at least in the circumstances of this case, *Colon*'s holding seriously undermines the notion that plea agreements are to be strictly construed *against* the government, with the reasonable expectations of the parties in mind.[13]

If the government wished to unambiguously preserve its right to walk away from its stipulations on appeal, it could easily draft a provision to that effect. *See United States v. Rodriguez-Castro*, 641 F.3d 1189, 1192 (9th Cir. 2011)

---

reach the same result as he reached before." *Enriquez*, 42 F.3d at 772. *See also United States v. Gaviria*, 49 F.3d 89, 92 (2d Cir. 1995).

[13] The government's breach-on-appeal was not raised in Turnick's opening brief because it had not yet occurred. As the government otherwise would not have an opportunity to respond in writing to these arguments, Turnick would not object to a motion for further briefing on this point only.

18

(interpreting a plea agreement that expressly entitled the government "to support on appeal the sentence actually imposed."); *United States v. Griswold*, 57 F.3d 291, 298 (3d Cir. 1995) (involving a plea agreement providing that "nothing in this agreement shall limit the government in its comment in, and responses to, any post-sentencing matters."). Turnick's plea agreement contains no such provision.

The government attempts to creatively interpret (Resp. 34-35 n.9) the following paragraph in a manner that would allow it to argue against the stipulations it has drafted and presented to a criminal defendant whenever a district court or probation officer "contemplates" a different Guidelines calculation:

> It is understood that[,] pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

A.52.

As a preliminary matter, this paragraph makes no distinction between "appropriate arguments" presented before and after a notice of appeal is filed. *See Rivera*, 115 F.4th at 149 ("[T]raditional contract principles require us to give the precise terms in a plea agreement their plain and ordinary meaning."). Rather, it is temporally limited only insofar as it becomes relevant whenever a district court or

19

probation office "contemplates" a Guidelines calculation that varies from the parties' stipulations. Accordingly, if the government's interpretation were correct, it would have been permitted it to argue against its criminal history calculation stipulation as soon as the PSR was issued (when the Probation Office first "contemplate[d]" the addition of a criminal history point for Turnick's DWAI). At the same time, because this clause does not purport to favor one party over the other, the government's interpretation would allow criminal defendants to immediately abandon their stipulations and argue in favor of any downward "adjustments, departures, or calculations" that have been "contemplate[d]" by the Probation Office or the court. A.52.

Moreover, if the cited paragraph's reference to "all appropriate arguments," A.52, properly could be construed in the government's favor to such an extent that it would permit arguments *in opposition to* the parties' contractual stipulations (rather than "appropriate arguments" *in support of* those stipulations—a reading that makes far more sense), there would have been no reason for the government to state, in its sentencing submission, that it "stands by its stipulation." A.87 n.6. But the government's response to the second question presented on appeal notably does not rely on such an argument. Instead, the government specifically argues that it did not breach the plea agreement at sentencing because of the fact that it included this footnote in its sentencing submission. *See* Resp. 29.

The relevant paragraph of the plea agreement either does or does not permit parties to argue against their own stipulations as soon as a probation officer or district court contemplates a contrary Guidelines calculation. But interpreting that paragraph in such a fashion, while also pretending that it is only or primarily relevant to appellate arguments, requires a particularly strained and improper construction of a government-drafted provision.

## **Conclusion**

The case should be remanded for resentencing.

Dated:     March 5, 2026            s/    Lucas Anderson
          New York, New York      Lucas Anderson
                                  *Of Counsel*
                                  Rothman, Schneider,
                                       Soloway & Stern, LLP
                                  100 Lafayette Street, Ste. 501
                                  New York, New York 10013
                                  (212) 571-5500

## Certificate of Compliance

This brief complies with Rule 32(a) of the Federal Rules of Appellate Procedure and with Rule 32.1 of the Local Rules of this Court. This brief contains 5,207 words, including footnotes and headings, and is printed in proportionally spaced 14-point Times New Roman typeface.

Dated:       March 5, 2026             s/   Lucas Anderson
New York, New York        Lucas Anderson
*Of Counsel*
Rothman, Schneider,
     Soloway & Stern, LLP
100 Lafayette Street, Ste. 501
New York, New York 10013
(212) 571-5500

22